The next case this morning is 5-20-0073 People v. Hamilton. Arguing for the appellant, June Hamilton, is Lloyd Cueto. Arguing for the appellate, People of the State of Illinois, is Trent Marshall. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings.  Mr. Cueto, are you ready to proceed? Yes, sir. Then go right ahead. All right, thank you. Good morning to the court. I know you guys have already had a long morning. Your Honors, what I'm bringing to you today is an appeal from a criminal conviction. It's concerning two counts, one account of forgery and the other account of public contractor misconduct. We have seven allegations in our appeal, but if it's all right for the purposes of argument, essentially it boils down to a couple of issues. One, that we don't believe that the state met their burden in proving every element of each offense beyond a reasonable doubt. Two, that we believe the jury instructions that were given were improper, in particular to the second account of public contractor misconduct, which I think also had an impact on both counts, the jury instructions. Three, that there were some inflammatory or misleading comments made in the state's closing argument. And then kind of lastly, that the sentence that was imposed was excessive. In the interest of efficiency, if it's all right with the court, I'll just rest on the pleadings for the excessive sentence argument and talk more about the elements and the jury instructions if that's all right. Go right ahead. Thank you. I know the court is familiar with the background. My client, June Hamilton Dean, was a financial consultant for the East St. Louis Township. The township is tasked with providing assistance and benevolence to the citizens of East St. Louis, and there is a multifaceted approach to the East St. Louis Township. There is an elected board who serves the township, and that board is tasked with oversight of the township. It's also tasked with the hiring and firing of long-term employees. But there's also hired personnel or hired consultants, which is what Ms. Dean was. In particular, her job title was to be a financial consultant. Her general role was financial oversight and the hiring of personnel for some of the sub-programs that the township serves. And there's numerous. There's a program called Earn Fair, which is to help transition former inmates or convicted individuals back into normal life. There are programs for the food pantry. There are programs for helping senior residents who need assistance with their rent or other issues. And so Ms. Dean had the ability under her consultant role to do certain hiring and firing with these sub-programs. The case before the court here concerns the Clyde Seed Jordan Center in East St. Louis, which serves two real purposes. There's a food bank and there's a senior citizen service center. Ms. Dean had intended to hire someone who was close to her at the time. It was her significant other's sister, a young lady by the name of Rashaunta Lacey. Ms. Lacey was a registered nurse in the state of California, was going to be moving back from California to the East St. Louis area, and she was going to be taking up the role of a senior services specialist. In anticipation of Ms. Lacey being hired, for which Ms. Dean had the authority to do and believes she had the authority to do, there were two letters drafted to help Ms. Lacey acquire an apartment or a home when she was moving back. At the end of the day, this particular case is actually just about two letters. That's it. The allegations of forgery and public contractor misconduct are centered around two letters, one that was drafted February 5th of 2016 and one that was drafted March 8th of 2016. The February 5th letter that was drafted was sent to an apartment complex known as Christ One Homes, in which it represented that Ms. Lacey was going to be hired to work for Township, and that there was a representation of future employment with the Township. Ultimately, that letter was signed by my client, and the second letter again represented Ms. Lacey did not live at the initial Christ One apartment complex. The second letter, March 8th, 2016, was to a McDonald Homes, in which there was a letter drafted for an office manager by the name of Yvette Johnson, but no signature was ever affixed to that particular letter. It was nothing more than a simple draft of a letter, again representing that Ms. Lacey was going to be hired by the Township and would have future employment. These letters were made as part of a comprehensive apartment application in both occurrences. There's nothing about this case where there's any material benefit that is alleged that my client, Ms. Dean, acquired. There's nothing here about any kind of financial gain that Ms. Dean acquired. There's nothing in the allegations by the state that there's any kind of financial or material benefit that anybody lost by any means. Ultimately, Ms. Lacey lived at the second apartment complex, and by all testimony in the record, she was an ideal tenant and there was never an issue. And that's what's before the court here. The issue here is, when you break down the elements first of forgery, was there a document that was designed with intent to defraud? Ms. Dean did have a job at the Township, she had the authority to hire Ms. Lacey, or at least believe she did, and all she ever did was draft two letters that represented the belief that Ms. Lacey was going to have future employment with the Township that would be part of a comprehensive rental application. That's it. No salaries were dispersed, no money was dispersed. The state's position is that Ms. Lacey's job would have term of employment. Whether that's accurate or not, there's no intent to defraud anybody but the drafting of these two letters. And that goes into the second element of forgery, knowingly made a false document. Ms. Dean was a financial contractor with the board, and the first letter I mentioned, she affixed her own signature to and represented that she had the authority to hire Ms. Lacey. She just created a draft of a letter and put a signature block on there for the office manager without affixing anybody's signature. There's no allegation here of a fake signature or somebody imposing somebody else's authority on a document like a fraudulent check. And that goes of course to the third and fourth elements of was the document apparently capable of defrauding another or was it represented that had been made by another. And we know that it was never represented that it was made by another because my client Ms. Dean emailed the second letter directly from her own account to the Township email account. And introduced in the record was the email said, hey please follow up on this. Please see if the apartment complex needs to know anything else. I would describe it not to be overly simplistic as no more than what everybody does in their office every day. People draft a letter, email it, they don't sign somebody else's name, they just draft a letter and say, hey would you please follow up on this matter for me. And at the end of the day, the reason this case matters so much is although Ms. Dean was only put on 30 months probation, the statute requires that she can't serve public office or work on a campaign or work in the public sector for a decade because of this conviction. The dramatic impact of her life on these two convictions, it you know again will take 10 years of employment opportunities from her. Her woman has absolutely zero criminal history or criminal record and who even at the state's strongest allegations did nothing more than draft two letters for part of a comprehensive rental application. Lastly, the jury instructions when it comes to public contractor misconduct, our argument was they did not include the term forgery as far as the law that was broken and that should have been done. They left it open to the jury that they could interpret that Ms. Dean was capable of any wrongdoing to be guilty of that crime. Thank you. Thank you counsel. Before we move on, Justice Moore or Justice Vaughn, do you have any questions at this point? No questions. Okay, thank you. Obviously Mr. Cueto, you'll have your chance for rebuttal. Mr. Marshall, go right ahead. Thank you, your honor. It's a pretty record intensive case. The state maintains that in light of the trial evidence summarized on pages one through five of its brief, the trial court rightfully denied a defense motion for a directed verdict and defendant's public contractor misconduct should be affirmed. The state's evidence established that during the defendant's tenure as a contractual consultant with the township, she created two documents that constituted forgeries under the statute and did so with the intent to defraud as defined by the applicable definitions. Although delivery was not an element, the evidence further established that both letters were received by their attended recipients and both had their intended effect. In the state's brief, I indicated that direct delivery of the Christone Christ one letter could be found and maybe constructive delivery of the McDonald, but I would say that the jury could have reasonably concluded that McDonald letter had been directly delivered by the defendant as well. She just did throw did through so through the shared account at the office. The state further maintains that the defendant's defense at trial was based on the same speculation and unsupported suggestions that she argues on appeal. There was no evidence that the evidence in fact was against her belief that she had any authority. She didn't testify at her sentencing hearing and allocution. She made an unsworn statement that this was a big misunderstanding and a draft process. She thought she could hire Lacey, but there was no evidence of that at trial. There was no evidence presented by the defendant at all at trial, and the jury was instructed that arguments are not evidence. So under the circumstances and in light of cases such as people versus Kelly and people versus Willis, it was permissible for the state to argue in its rebuttal that defense counsel is a very good defense attorney, but he was trying to divert the jury's attention from evidence from the evidence that was actually presented. Now I'll double down on that sentiment and say counsel is an excellent defense attorney, but he's again offering speculation unsupported suggestions in an attempt to divert attention from the evidence that was actually presented. And I don't think this court has to look any further than the defendant's statement of facts to see that. Now the state did not move to strike those statement of facts, but would emphasize that pages R22 through 27 are citations to the defendant's opening statement. As for the jury instructions, the two crimes charged were forgery, public contractor misconduct based on forgery. No other crimes were before the jury. They weren't asked to consider anything else. There weren't IPI instructions for public contractor misconduct, but they mirror exactly the ones that are provided for official misconduct. Under the abuse of discretion standard, trial court did not abuse its discretion in not modifying that instruction to say forgery and prejudice could not be found in any sense in my opinion. As for the defendant's sentence, she did receive the maximum available term of probation. But the court indicated that had she done something more than merely help her future sister-in-law obtain housing, it would have probably ordered her to serve at least some jail time to deter public corruption in the township, which the trial court noted was an ongoing problem. So under circumstances, I believe that the sentence was a reasoned judgment. If there are any specific questions, I would just ask that the defendant's conviction and sentence be affirmed. Thank you, counsel. Justice Moore and Justice Vaughn, do you have any questions? No, I have no questions. All right. Well, thank you, Mr. Marshall. How about your rebuttal, Mr. Cueto? Thank you, your honor. Picking up on a couple comments counsel made, my client didn't testify. Defendant didn't present any evidence. Obviously, as the court knows, that's not my client's affirmative obligation. The burden rests with the state to prove their elements beyond a reasonable doubt. It's certainly just a constitutional right not to testify. The big issue here that I would like to tie in with the jury instructions, there are pattern jury instructions for public official misconduct. What my client is charged with is being a third party public contractor, for which there are not. There was an underlying theme throughout this trial that insinuated to the jury that maybe she was guilty of something other than these charges. I apologize for doing a record dump here really quick to the court. If your honors would take a look at the record, you'll see from opening statement through closing argument, there's this theme of something is fishy in a St. Louis township, and she was good for something else. What I mean by that is, starting with opening statement, the record page 18, the state says, no one suffered a life-altering harm here, but government should be efficient, and they should take care of taxpayer money. That's not what the charge of forgery, a falsified document is about, affixing someone else's name to a document is about. That is already implementing on the jury's mind that somebody is just crooked. That theme continued throughout. The first witness was an FBI agent, Charles Willenborg, who testified Ms. Dean was charged as an unexpected ancillary event to a financial investigation into other township elected officials. There was a financial investigation into Ms. Dean's brother about the misappropriation and misuse of funds that ultimately led them to start questioning Ms. Dean. Again, that's insinuating that she's part of some larger conspiracy or some charge that's actually not listed in the indictment. This goes all the way through the general, there's only five witnesses, two-day trial, but it goes through the theme of the state's case. I think it's ultimately represented in the state's closing argument in which they say, when the average person thinks of a forgery, they think of somebody else signing someone's name. I'm not, Your Honor. I apologize. In that case, the Supreme Court found that falsifying bank accounts for purpose of getting in the lease agreement constituted forgery. Here, that's easily distinguishable, Your Honor, because nobody falsified any bank accounts. The two letters that issue quite literally say, we anticipate Ms. Lacey will have employment with it. It doesn't even represent that she's received a paycheck. It doesn't even represent any money has come from the township. It's just saying future employment. She didn't really receive the employment and the person who wrote the letters didn't really have the authority to. I'm sorry. Yes, sir, Your Honor. I apologize. I don't know my time limit here in answering questions. My first time appearing here before the appellate court, so thank you, Your Honor. Ms. Lacey was employed through what's called the Earn Fair Program, that program that I mentioned before that was for people who had been convicted of various crimes and then eased them into society. What was demonstrated at testimony at trial is that's how the township worked. They'd get you in one of these programs. It's almost like a probationary employment program. Before then, you would transfer into something that would be a full-time position. And so there was never payment for a senior services specialist. There was never any compensation received. And again, those letters were only about future employment. And the last thing, if I may, Your Honors, why those jury instructions? Those letters, though, they set forth a salary. One of the letters said she would be employed as a senior services specialist for $34,000 a year. And that really wasn't true, was it? So Ms. Dean's intention was that she would be. She never ultimately was, but Ms. Dean's intention that she would be. And one of the other witnesses, Ms. Edith Moore, who was a trustee, acknowledged on the record there was the existence of a senior services specialist position with the township. So again, it wasn't a false representation of the intention to hire her in that position. It just didn't come to fruition. And again, both, I believe, both apartment managers acknowledged that these were comprehensive residential applications. There was criminal background checks, credit checks. Ms. Lacey had provided pay stubs from her job as a nurse in California. So again, these were not the sole reason that she was allowed, in the second instance, to have an apartment. And if you're asking- The letter to Christstone said she's going to be senior specialist for a salary of $36,000. So isn't that a factor stating two different salaries? Isn't that a factor the jury would consider in saying, these are made up, this wasn't really happening? Certainly, consideration is all evidence, Your Honor, for the jury. But again, there's no misrepresentation here. There's no intent to defraud. A little bit of the way the East St. Louis Township Board operates is there's a little bit of a moving target in some of these positions. And whether the exact compensation was arrived at, I would actually argue goes to the fact that, yeah, maybe the board had not voted on it yet. And that there was somewhat undetermined resolution to where Ms. Lacey was going to end up being employed by the township. But again, no funds have been paid, no representation that she had received a pay stub as of that date from the township that was ever made. Thank you. And if Your Honor would allow me one last comment, if I may. Go right ahead. Thank you. The jury instruction issue is a big deal because there's no pattern instruction. And because all the jury heard was that to be guilty of public contractor misconduct was the defendant knowingly performed an act that they knew was forbidden by law. My request at the time was please say that specifically, as reflected in the indictment, that act was forgery. And that's an issue because there was this underlying theme of some kind of financial corruption or general corruption. And it is ultimately reflected in the state's closing argument. My final point here, the state's attorney stated every time a public servant, a public employee or public contractor acts from a position of patronage or nepotism or corruption, it hurts our community. And as true as that statement might be, they're implying to the jury who had heard that Ms. Lacey had an intimate relationship with Ms. Lacey's sister-in-law for a job. And what they're hearing is any act you know to be wrong is good enough to convict her of this felony. And it's had a very real impact on my client's life. Well, thank you, counsel. Obviously, we will take the matter under advisement. I should start this. Justice Moore, Justice Vaughn, any final questions? No. Other questions. Thank you. Well, we will issue an order in due course. I believe this will end our proceedings for today. And this court will stand in recess until nine o'clock tomorrow. Thank you. Gentlemen, have a great afternoon.